UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NORTH DAKOTA

SOUTHWESTERN DIVISION

_____

| | |
|---|---|
| UNITED STATES OF AMERICA, | 1:14-CR-239 |
| Plaintiff, | |
| | MEMORANDUM IN SUPPORT OF |
| vs. | MOTION TO EXCLUDE EXPERT |
| | TESTIMONY |
| RYAN KEITH IRONROAD, | |
| Defendant. | |

_____

Ryan Ironroad files this memorandum in support of his motion to exclude the expert

testimony of Bureau of Indian Affairs Special Agent Ware and Todd Lebeau and Duane His

Chase regarding the earwitness lineups performed which identified Mr. Ironroad as the individual

who killed Clay Hagel.[1] Although the government has not yet notified Mr. Ironroad which

particular evidence or particular expert(s) will be called to testify, it is clear from discovery and

the Government's Response to the Defendant's Motion to Suppress the Voice Identifications that

the government anticipates offering the earwitness lineups as evidence through the testimony of

Special Agent Ware, Mr. Lebeau, and Mr. His Chase. Mr. Ironroad moves to exclude such expert

testimony on the following grounds:

**FACTS**

Bureau of Indian Affairs Special Agent Micah Ware conducted two separate earwitness

---

[1] This is a separate challenge to the earwitness lineups on different grounds than Mr. Ironroad's constitutional challenges to the earwitness lineups. For the sake of the record, the constitutional challenges are contained in Mr. Ironroad's Motion to Suppress and Memorandum in Support which were filed on April 14, 2015 and are labeled as Docket Numbers 30 and 31.

lineups with Mr. Lebeau and Mr. His Chase on December 3, 2014 and December 4, 2014, respectively. Agent Ware only presented one suspect to both witnesses, a one person lineup or a showup. Specifically, Agent Ware only presented Mr. Ironroad's voice. Under these suggestive and unreliable circumstances, Mr. Lebeau and Mr. His Chase selected Mr. Ironroad as the individual who killed Clay Hagel.[2]

## ARGUMENT

**I.      The Evidence Is not Admissible under FED. R. EVID. 104 and 702**.

The admissibility of expert testimony which relies on scientific or specialized knowledge is subject to Rules 104(a) and 702, FED. R. EVID. Under Rule 104(a), the trial judge must make a preliminary assessment of whether the testimony's underlying reasoning or methodology is scientifically valid and properly can be applied to the facts at issue. *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 592-93 (1993). Rule 702 requires the court to determine the relevancy and reliability of the evidence. *Id.* at 589. Rule 702 states that:

> "[I]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

In *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 113 S. Ct. 2786 (1993), the Supreme Court held that Rule 702, FED. R. EVID., provides the standard for admitting expert

---

[2] Mr. Ironroad asserted a more detailed factual basis in his Memorandum in Support of Motion to Suppress Voice Identifications which was filed on April 14, 2015 and is labeled as Docket Number 31. If the Court needs a further factual basis and for the sake of the record, Mr. Ironroad would present those facts as also applicable to this motion.

testimony and the trial judge has the task of ensuring that an expert's testimony is relevant and reliable. The *Daubert* Court suggested five factors that trial courts may consider in determining whether proffered expert testimony is scientifically valid: (1) whether the theory or technique can be and has been tested; (2) the known or potential rate of error of the particular technique; (3) the existence and maintenance of standards controlling the technique's operation; (4) whether the technique is generally accepted; and (5) whether the theory or technique has been subjected to peer review and publication. *Daubert*, 509 U.S. at 593, 594. *See also Lauzon v. Senco Prods.*, 270 F.3d 681, 685-88 (8th Cir. 2001); *United States v. Boswell*, 270 F.3d 1200, 1204 (8th Cir. 2001).

In *Kuhmo Tire Co. v. Carmichael*, 526 U.S. 137, 119 S. Ct. 1167 (1999), the Supreme Court held that the *Daubert* factors may apply to other experts who are not scientists, concluding that the *Daubert* "gate-keeping" obligation applies not only to "scientific" testimony, but to all expert testimony. 526 U.S. at 141. *Kuhmo* also reaffirms that the *Daubert* factors were not definitive, so as to allow a court to consider several more specific factors that might "bear on" a judge's gate-keeping determination. 526 U.S. at 149. In the instant case, evidence or testimony presented by an expert regarding the earwitness lineups and resulting identifications requires specialized knowledge. Under *Kuhmo*, the admissibility of such evidence or testimony is, therefore, subject to Rule 702 and the *Daubert* factors.

The Eighth Circuit has discussed Rule 702 and Daubert in *In re: Air Crash at Little Rock Arkansas*, 291 F.3d 503, 513-14 (8th Cir. 2002):

> In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the Supreme Court detailed the Rule 702 standard for admission of scientific evidence. Daubert offers general criteria for assessing the reliability of scientific

evidence, and directs the district court to perform a gatekeeping function with respect to such evidence to ensure that evidence submitted to the jury meets Rule 702's criteria for relevance and reliability. Id. at 590-91. The rule's concern with scientific knowledge bottoms on issues of reliability, while the requirement that the evidence assist the trier of fact to understand the evidence or determine a fact in issue is a relevance test.

*Id.*

In this case, Special Agent Ware conducted two earwitness lineups with both earwitnesses to the murder. Special Agents Ware's and Mr. Lebeau's and Mr. His Chase's testimony will indicate that, based on the earwitness lineup conducted, they identified Mr. Ironroad as the individual who killed Clay Hagel. Mr. Lebeau and Mr. His Chase could not testify to such an opinion without the skill and experience of Special Agent Ware, notably Special Agent Ware's investigative skills, training, and experience. He is a federal investigative agent with specialized knowledge, skill, and experience based on his training through the Federal Government and experience as a law enforcement officer. Mr. Lebeau's, Mr. His Chase's, and Special Agent Ware's testimony regarding the earwitness lineups conducted are inextricably intertwined. Under *Kumho*, the admissibility of such evidence or testimony is, therefore, subject to Rule 702 and the *Daubert* factors.

There has been no showing that the anticipated testimony of Special Agent Ware, Mr. Lebeau, and Mr. His Chase regarding the earwitness lineups is based upon sufficient facts or data, that it is the product of reliable principles and methods, or that the witness has applied the principles and methods reliably to the facts of the case. Mr. Ironroad asserts that any such testimony is not reliable, results in improper and prejudicial influence upon the jury, and invades the province of the jury. Mr. Ironroad anticipates that the methodology used by the government

to support the earwitness lineups will be vigorously contested. Mr. Ironroad further believes that this methodology is flawed and unscientific as the earwitness lineups were conducted with only one exemplar. The research in the field of earwitness identifications shows this method to be flawed as it is incredibly suggestive and unreliable and often leads to misidentifications. Mr. Ironroad also anticipates that a *Daubert* hearing is required to determine whether the testing, protocol, procedures, and reports and conclusions utilized by the government satisfies the *Daubert* standards and whether such evidence should be admitted at trial. Specifically, the government did not properly compose an earwitness lineup in this case, did not provide proper instructions to the witnesses prior to conducting the earwitness lineups, the earwitness lineups were not conducted according to proper procedures, and the results of the earwitness lineups were not properly recorded.

Mr. Ironroad requests that a *Daubert* hearing be held prior to trial so that the admissibility issue can be conducted outside the presence of the jury. The government, being the proponent of such evidence, bears the burden of proving its admissibility. Given the Court has scheduled an evidentiary hearing for May 19, 2015 at 1:00 p.m., Mr. Ironroad believes the hearing can be conducted in conjunction with the evidentiary hearing. If more time is needed to prepare, Mr. Ironroad would request a separate hearing be scheduled.

## II.     The Evidence Is not Admissible under FED. R. EVID. 403.

Besides considering admissibility under Rules 104(a) and 702, FED. R. EVID., the Court must still conduct a balancing test under FED. R. EVID. 403; *Daubert*, 509 U.S. at 595. If the Court were to allow the expert testimony and evidence under Rule 702, Mr. Ironroad asserts as an alternative argument that such evidence and testimony should be prohibited under Rule 403

on the basis that its probative value is substantially outweighed by the danger of unfair prejudice.

This is especially true in light of the nature of law enforcement pretrial identification procedures. Most jurors are not familiar with or have knowledge of how to properly conduct an eyewitness or earwitness lineup or how to properly investigate a crime. Additionally, most jurors would have substantial deference for law enforcement officers and their investigation abilities and the jurors would substantially credit this evidence. Therefore, the expert testimony can become very persuasive despite its lack of reliability and flawed conclusions. Given the severe lack of reliability of this evidence, the probative value of this evidence is substantially outweighed by its danger of unfair prejudice.

WHEREFORE, Mr. Ironroad moves the Court for its Order excluding the expert testimony, specifically the earwitness lineups and resulting identifications performed in this case, from trial.

Dated this 9th day of May, 2015.

<div style="margin-left: 40%;">

Respectfully submitted,

NEIL FULTON
Federal Public Defender

By:

/s/ Ryan M. Costello
Ryan M. Costello
Assistant Federal Public Defender
Attorney for Defendant
Office of the Federal Public Defender
Districts of South Dakota and North Dakota
324 North 3rd Street, Suite 1
Bismarck, ND 58501
Telephone: 701-250-4500 Facsimile: 701-250-4498
Filinguser_SDND@fd.org

</div>

6

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 9, 2015, the following document(s):

**Memorandum in Support of Motion to Exclude Expert Testimony**

were filed electronically with the Clerk of Court through ECF, and that ECF will send a Notice of Electronic Filing (NEF) to the following:

    Gary Delorme
    Gary.Delorme@usdoj.gov

I further certify that copy of the foregoing documents and the Notice of Electronic Filing will be mailed first class mail, postage paid, to the following non-ECF participants:

                      */s/ Ryan M. Costello*
                      Ryan M. Costello
                      Assistant Federal Public Defender